UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – DETROIT

In re:

Ted Ayoub,

    Debtor

Case No.: 10-62790-wsd
Chapter 7
Hon. Walter Shapero

/

Ted Ayoub,

    Plaintiff,

v.

Adv. Pro. No.: 15-04153

Joseph F. Yamin et al.,

    Defendants

/

## **OPINION GRANTING DEFENDANTS' MOTIONS TO DISMISS**

Ted Ayoub ("Ayoub") received a Chapter 7 discharge on April 18, 2011. He then filed on October 28, 2014 a motion to reopen his main bankruptcy case for the purpose of filing this adversary proceeding.[1] Ayoub's complaint essentially seeks a determination that: (a) various Defendants violated Ayoub's automatic stay and/or discharge injunction; (b) orders of a state court violated Ayoub's discharge injunction and are thus void *ab initio*; (c) Ayoub is entitled to attorney fees, costs, and punitive damages; and (d) Ayoub is entitled to other substantive relief for asserted

---

[1] The Court granted Ayoub's motion to reopen at a December 11, 2014 hearing and required Ayoub to present an appropriate order. There was an objection to Ayoub's initially proposed order, prompting a further hearing on January 22, 2015, the result of which was that Ayoub was to present a revised order. That was never accomplished and the main bankruptcy case remains closed. Nonetheless, Ayoub has filed and pursued this adversary proceeding, and given the proceedings to date, the Court is acting and treating the case as if it was reopened solely for this purpose.

1

causes of action. Defendants separately filed five motions to dismiss Ayoub's complaint pursuant to Fed.R.Civ.P. 12(b)(6). The various motions were filed by Simon, Galasso & Frantz, PLLC and John D. Gwyn (Dkt. 16); FirstMerit Bank and Weltman Wienberg & Ries Co., LPA (Dkt. 19); Stephen C. Cooper (Dkt. 20); Beier Howlett, P.C., Lambert Leser, and Joseph F. Yamin (Dkt. 22); and RSA Design Group, LLC and Robert Szantner (Dkt. 23) (the relationships of whom are hereinafter set forth). The Dismissal Motions are premised on various bases and there is substantial overlap in the arguments presented. For the following reasons, each of the motions is granted and Ayoub's complaint is dismissed in its entirety.

Standard of Review

The dismissal of a complaint for failure to state a claim is governed by Fed.R.Civ.Pro. 12(b)(6), which is made applicable to this proceeding by Fed.R.Bankr.P. 7012(b). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "[T]he complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Followell v. Mills*, 317 Fed. Appx. 501, 505 (6th Cir. 2009) (citing *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005)).

Background

As gleaned from Ayoub's own testimony and the other undisputed facts, the salient facts and relationships among the parties follow. In 2007, Ayoub acquired approximately 69% of the stock

of Yamasaki Associates, Inc. ("Associates"), an architectural firm in which Robert Szantner ("Szantner") owned some of the remaining shares. At that time, Ayoub became the CEO of Associates and Szantner remained as an operating executive. Around the same time, Ayoub formed and became the sole shareholder of Yamasaki International, Inc. ("International"). The primary purpose of that entity was marketing Associates' services around the world. At various times, Ayoub's children also worked for one or both entities and were paid for such work. Citizens Bank, later succeeded by FirstMerit Bank, ("the Bank") was a creditor of Associates and Ayoub had personally guaranteed certain of Associates' obligations to it. Defendants John D. Gwyn, Joseph F. Yamin, Beier Howlett, P.C., Weltman Wienberg & Ries Co., LPA, and Simon, Galasso & Frantz, PLLC ("Bank Attorneys") are attorneys and law firms who at various times in their dealings with Associates represented the Bank. Defendant Stephen C. Cooper ("the Receiver") is a receiver appointed over both Ayoub and Associates by the Oakland County Circuit Court ("State Court"). RSA Design Group, LLC is an entity owned by Szantner, the two of which, together with their attorney Yamin, being referred to as "the Szantner Group." At some point, Associates experienced financial trouble, became unable to pay some of its ongoing taxes, salaries, etc., became unable to collect on its receivables, and asserted causes of action against some of its clients. Szantner left Associates at some point and formed RSA Design Group, LLC, and there ensued various claims and legal proceedings between and among the said various parties. On May 12, 2010, the State Court appointed the Receiver over Ayoub and Associates incident to money judgments against them in favor of the Bank. Ayoub filed a Chapter 7 petition on July 16, 2010, listing on Schedule B his interests in Associates and International, valuing each at $1, listing on Schedule F a debt to the Bank in the amount of $468,732.45, and also referring in his Statement of

3

Financial Affairs to the State Court proceedings. Ayoub received a discharge on April 18, 2011 and his bankruptcy case was closed on September 21, 2011 (the sole § 523 nondischargeability action being that filed by the U.S. Department of Labor, but none being filed by any of the Defendants involved here). On March 1, 2011, the Bank, through the Bank Attorneys, had filed an Amended Complaint in the State Court explicitly seeking relief only against International (i.e. not against Ayoub), stating with reference to Ayoub "…the above action has been stayed against him individually due to bankruptcy filing." Adv. Pro. Comp. Ex. 14 ¶8. On May 12, 2011, the State Court entered a default judgment against International in the amount of $502,009.50 and amended its prior Order Appointing the Receiver to include his jurisdiction and authority over International ("Default Judgment"). Subsequently, the Receiver pursued collection efforts on the judgments, which among other things included a February 20, 2013 creditor's examination of Ayoub ("Creditor's Exam").

The bases of Ayoub's complaint are that: (a) the post-petition Default Judgment against International violated the automatic stay and/or discharge injunction in this, his personal bankruptcy case, and is thus void *ab initio*; and (b) the Creditor's Exam violated the discharge injunction in this, his personal bankruptcy case, both thus entitling Ayoub to appropriate damages and relief.

<u>The Default Judgment</u>

As noted, the Default Judgment was against International only and not against Ayoub, the moving parties in the course of obtaining such emphasizing that to be the case and their intent. Notwithstanding that, Ayoub argues that somehow the automatic stay and the discharge injunction (which apply only with reference to Ayoub, the debtor) also applied to seeking the Default

4

Judgment and the ensuing actions in respect to attempts to collect on it. This argument ignores basic general principles of law as to the distinction and separateness of a corporate entity and its shareholder(s). Ayoub, and any individual debtor that may own a stock interest in a corporate entity, (a) own just and only that – a stock interest in the entity – and not an interest in the assets of that entity and (b) concomitantly, as stems from the very purpose and nature of incorporation, are not liable for the debts of that corporate entity, absent a separate specific undertaking or facts permitting ignoring the existence of the corporate entity. In the face of that, Ayoub in this case seeks to conflate the two, arguing essentially as bases for doing so that he, as the sole shareholder and primary operating employee of International, ought to thereby be also considered the actual owner of that corporation's assets, at least to the point, that would make attempts to legally pursue those corporate assets, considered to be violations of the automatic stay and/or the discharge injunction in his individual bankruptcy case. Such defies the clear law as stated and recognized by the following authorities.

That law is that a corporation "has a legal identity that is recognized as separate and distinct from that of its owners[.]" *Morris v. Schnoor*, No. 315006, 2014 WL 2355705, at *31 (Mich. Ct. App. May 29, 2014) appeal denied, 859 N.W.2d 514 (Mich. 2015). "A debtor's *interest in stock* of a corporation is property of the estate." *In re Cormier*, 382 B.R. 377, 386 (Bankr. W.D. Mich. 2008) (emphasis added). However, because a corporation has a separate identity from its owners, corporate assets do not become part of the bankruptcy estate of an individual debtor who owns stock in that corporation, even if he is the sole shareholder. *See In re D'Alessio,* No. 8-08-72819-REG, 2014 WL 201871, at *9 (Bankr. E.D.N.Y. Jan. 17, 2014) (counting cases). As such, various courts have held that an individual debtor's automatic stay is not violated if a creditor

5

pursues collection from a business entity in which the debtor has an interest. *E.g. Patton v. Bearden*, 8 F.3d 343, 348 (6th Cir. 1993) ("defendants' mere status as general partners does not entitle them to protection under the automatic stay of the debtor-partnership"); *In re Slabicki*, 466 B.R. 572 (B.A.P. 1st Cir. 2012) (automatic stay not violated where sole shareholder arrested for failing to appear at creditor's examination relating to a *corporate* debt); *In re Dugan*, No. 4:11-AP-1267, 2012 WL 6825328 (Bankr. E.D. Ark. June 20, 2012) (automatic stay not violated where creditor seized funds from business account of corporation of which the individual debtor was the sole shareholder). The same is true with regard to the discharge injunction, which is articulated as follows in the analogous case of *In re Kreuz*, No. 13-31490, 2014 WL 2765696, at *2-3 (Bankr. N.D. Ohio June 18, 2014):

> Plaintiff's complaint fails to allege a violation of the discharge injunction that is plausible on its face. A Chapter 7 discharge operates as an injunction against the commencement of an action to collect a discharged debt "as a *personal liability of the debtor*." 11 U.S.C. § 524(a)(2) (emphasis added). Subject to certain exceptions not applicable in this case, "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e).
>
> The sole basis of the claimed violation of the discharge injunction in this case is Plaintiff's allegation that Defendant filed a complaint in state court seeking a judgment against entities Smith's Restaurant of Wauseon, Inc., and Kreuzer's LLC. The averment in the state court action that Plaintiff is the sole shareholder/member of both entity defendants does not constitute a violation of the discharge injunction in his bankruptcy case or constitute an effort to hold him personally liable for any debt.

The foregoing necessitate the conclusion that proceedings relating to entry of the Default Judgment (and indeed the subsequent proceedings designed to effect collection thereon), directed as they were to International and not to Ayoub, did not violate either the automatic stay or the discharge injunction in or arising from Ayoub's individual bankruptcy case. Ayoub has not

6

asserted, nor can he prove a plausible set of facts supporting his allegations. Accordingly, the Defendants are entitled to dismissal.

The Creditor's Exam

As noted, Ayoub also alleges that, after he received his Chapter 7 discharge, the Receiver and other Defendants asked questions at the Creditor's Exam that violated the discharge injunction in Ayoub's personal bankruptcy case. Ayoub was discharged on April 18, 2011, the Default Judgment was entered on May 12, 2011, and the Creditor's Exam was conducted on February 20, 2013. Section 524(a) provides that a discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor" or, among other things, property of the debtor that is acquired after the commencement of the case.

The Creditor's Exam, which the Court has reviewed in detail, was brought about and scheduled at the behest of the Receiver. Its transcript covers some 102 pages, 90% or more of which involved questions asked by the Receiver, who made clear on a number of occasions his intent to seek assets of Associates and International and his awareness of Ayoub's personal discharge. For example, the Receiver referred to Ayoub's "final adjudication" in the Bankruptcy Court (i.e. his discharge) and stated "There's a judgment. We're trying to collect assets *of the corporations*[.]" Tr. at 27-28 (emphasis added). Ayoub was represented by an attorney at the Creditor's Exam (also his current attorney in this adversary proceeding) and that attorney never really objected or otherwise cautioned that Ayoub's discharge injunction was being violated by the questions asked. The questions at the Creditor's Exam to which Ayoub now objects include those related to his residence, income tax and bank records, employment, income, real estate holdings,

7

safe deposit boxes, and life insurance policies, all of which were in any event *de minimis* in relation to the thrust of the Creditor's exam – an examination that dealt almost entirely with what Ayoub knew about the affairs of International and Associates and their assets, causes of actions, books and records, etc. Mr. Gwyn, who was also in attendance, asked some questions, the thrust of which related to the existence and disposition of any assets of Associates and its causes of action. Mr. Yamin, who was also in attendance, asked a brief unobjected-to question about Ayoub's residence and his son's mortgage interest in it for loans by the son to Ayoub, as well as Ayoub's and his children's activities with Associates. All participating parties were aware of Ayoub's discharge and careful to avoid being caught up in discharge injunction issues.

Quite apart from Ayoub's continuing inability to understand or appreciate the difference between his personal assets and the corporate assets of Associates and International, facts that are also relevant to this inquiry, one must draw the conclusion that Ayoub cannot, by virtue of what took place at the Creditor's Exam (even if Ayoub's allegations are accepted as true) show a plausible claim for violation of the discharge injunction. The reasons for this conclusion are: first, in a situation particularly where there is a controlling or sole shareholder of a corporation, and a judgment creditor trying to effect collection of that judgment and tracing what happened to that corporation's assets, it is not only permissible, but a matter of proper diligence (particularly on the part of a court-appointed receiver) that there be inquiries designed to follow those assets and see whether or not any of those assets came into the hands of the shareholder or were otherwise directed by the shareholder elsewhere. That in turn necessarily involves at the least an inquiry into what assets the shareholder has and their source. That is particularly true in this case, as the Amended Complaint that ultimately resulted in the Default Judgment alleged that Ayoub

8

15-04153-mlo    Doc 49    Filed 06/01/15    Entered 06/01/15 14:44:28    Page 8 of 10

misdirected Associates' assets to International, *e.g.* Adv. Pro. Comp. Ex. 14 ¶¶43, 50, which as noted was wholly owned by Ayoub. Consequently, that kind of relevant inquiry cannot by its very nature found to be a plausible violation of the discharge injunction. In this case, it clearly did not go beyond appropriate bounds. Second, it was made explicitly clear that the Receiver and the other Parties were aware of Ayoub's bankruptcy discharge, and in fact their questioning stayed within permitted bounds and short of any attempt to collect on Ayoub's discharged personal liability on the judgment (note that Ayoub's claims are based on his erroneous view that an attempts to secure information relative to collection of the judgment against Associates and International from their corporate assets were attempts to collect on Ayoub's discharged personal liability from his personal assets within any reasonable meaning of the discharge injunction in his case). Third, Ayoub was represented by counsel at the Creditor's Exam (indeed, by the *same* counsel who is now prosecuting this adversary proceeding) and that counsel never really appropriately objected to or otherwise cautioned that Ayoub's discharge injunction was being violated.

Additionally and while not decisive or necessary to the Court's conclusions, it is worth noting that (a) even if one could make a plausible case to avoid dismissal on the grounds asserted, one can wonder whether any material damages or damages exceeding *de minimis* damages can be shown; and (b) there are other considerations present that might preclude recovery, considering the alleged discharge injunction violations took place on February 20, 2013, but Ayoub did not begin to pursue reopening the main bankruptcy case (to be able to file this adversary proceeding) until October 28, 2014, some twenty months later. Such, unless adequately explained, suggests laches and/or other equitable issues favoring dismissal. Accordingly, as to his allegations regarding the Creditor's Exam, Ayoub's complaint fails to state a plausible claim to relief and Defendants are

9

also entitled to dismissal with reference thereto. There are also other asserted grounds for dismissal that need not be addressed in light of the foregoing.

## Conclusion

Each of the Defendants' Motions to Dismiss are therefore granted and Ayoub's complaint is dismissed in its entirety.

The hearing on the Motion for Sanctions (Dkt. 34) that had been set for June 4, 2015 will be adjourned. There was also filed in the main bankruptcy case a Motion for Sanctions (Dkt. 97), which has not been responded to or otherwise acted upon. The parties are directed to address that motion accordingly. The Court will contemporaneously enter an appropriate order.

.

**Signed on June 01, 2015**

                                         **/s/ Walter Shapero**
                           **Walter Shapero**
                           **United States Bankruptcy Judge**