UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHER DIVISION — DETROIT

In re:

Ted Ayoub,                                   Case No.: 10-62790-wsd
                                                                Chapter 7
     Debtor                               Hon. Walter Shapero
_____/

Ted Ayoub,

     Plaintiff,

v.                                                               Adv. Pro. No.: 15-04153

FirstMerit Bank,
Joseph F. Yamin et al.,

     Defendants
_____/

**OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SANCTIONS**

<u>Introduction</u>

Before the Court are Motions for Sanctions filed by eight of the ten Defendants. These Motions are substantially the same so the Court will address them together.

The Debtor Plaintiff in this adversary proceeding is Ted Ayoub ("Ayoub"), who received a Chapter 7 discharge on April 18, 2011. In October 2014 Ayoub moved to reopen his bankruptcy case for the purpose of filing this adversary proceeding.[1] The relevant Defendants are Joseph F. Yamin ("Yamin"); John D. Gwyn ("Gwyn"); Weltman, Wienberg, & Ries CO., LPA ("Weltman"); Robert Szantner ("Szantner"); RSA Design Group, LLC ("RSA"); Lambert

---

[1] The Court granted Ayoub's Motion to Reopen and required him to present an order reflecting same. There was an objection to his initial proposed order and he never presented a revised order. As a result, the main bankruptcy case remains closed. However, Ayoub has pursued this proceeding and given the matter's posture, the Court is treating the bankruptcy case as if it was reopened solely for the purpose of this adversary proceeding.

Leser ("Lambert"); Stephen C. Cooper ("the Receiver"); Beier Howlett, P.C. ("Beier"); FirstMerit Bank, *as successor in interest to Citizens Bank* ("FirstMerit"); and Simon, Galasso, & Frantz, PLLC ("Simon"). The substantive claims in Ayoub's complaint are that those ten Defendants violated the automatic stay and/or the discharge injunction by way of actions pursued in and orders obtained from a state court, all of which Ayoub argues violated his discharge injunction and are void *ab initio*. Defendants responded to the complaint with five separate motions to dismiss, which the Court granted in its opinion dated June 1, 2015 (Dkt. 49 ("Dismissal Opinion"). Subsequently, eight of the ten Defendants filed the Motions for Sanctions that are the subject of this opinion.[2] For the reasons stated herein, the Court grants each of those Motions for Sanctions.

Procedural and Factual Background

Most of the relevant facts are in the Dismissal Opinion. Ayoub acquired approximately 69% of the stock in Yamasaki Associates, Inc. ("Associates"), an architectural firm in which Szantner owned some of the remaining shares. Ayoub became Associates' CEO and Szantner remained an operating executive. Around the same time, Ayoub formed and became sole shareholder of Yamasaki International, Inc. ("International"), an entity the primary purpose of which was to globally market Associates' services. Citizens Bank, later succeeded by FirstMerit Bank (collectively "the Bank"), was a creditor of Associates, and Ayoub had personally guaranteed some of Associates' obligations to the Bank. Defendants Yamin, Gwyn, Beier, Weltman, and Simon ("Bank Attorneys") are attorneys and law firms that each, at various times, represented the Bank in its dealings with Associates. The Receiver is the receiver the Oakland County Circuit Court ("the State Court") appointed over both Ayoub and Associates. RSA is an

---

[2] The Motions for Sanctions do not involve Defendants Gwyn and Simon.

entity that Szantner owns and the Court will refer to Szantner and RSA collectively as "the Szantner Group."

Before Ayoub's bankruptcy, Associates began experiencing financial trouble. It became unable to currently pay some of its taxes, salaries and other obligations, was unable to collect its receivables, and had commenced collection litigation against some of its clients. After these troubles began Szantner left Associates and formed RSA. The financial struggles also resulted in Citizens Bank filing suit in 2009 against Ayoub, Associates, and others in the State Court. On May 12, 2010, the State Court appointed the Receiver over Ayoub and Associates incident to a money judgment the Bank obtained against them that case. About a month later, on June 16, 2010, Ayoub filed for bankruptcy.

On his Schedule B Ayoub listed his interest in Associates and International, valuing each at $1.00 and on his Schedule F he listed a debt of $468,732.45 to the Bank. Ayoub received his discharge on April 18, 2011 and the Court closed his bankruptcy case on September 21, 2011. None of the Defendants in this matter alleged during the bankruptcy case that Ayoub's debt to the Bank was non-dischargeable.

Before Ayoub's discharge the Bank (through the Bank Attorneys) filed an Amended Complaint, against International only, in the same court case that led to the default judgment against Ayoub and Associates and that led to the appointment of a receiver. That Complaint was filed on March 1, 2011, and in it informed the parties and the State Court it was not seeking relief from Ayoub individually. In that regard, the Amended Complaint states "…the above action has not been stated against him [Ayoub] individually due to bankruptcy filing." Adv. Pro. Comp. Ex. 14 Para. 8. On May 12, 2011, the State Court entered a Default Judgment against

only International for $502,009.50, incident to which the State Court also amended its Order Appointing the Receiver to add to the Receiver's jurisdiction authority over International.

Subsequently, Ayoub filed a federal action on his own behalf and as majority owner of Associates and International. Following a show-cause order based on lack of diversity jurisdiction, that federal case was dismissed.

Thereafter, the Receiver sought a contempt order in the state court case, against Ayoub and his attorney Norton Gappy ("Gappy"), for having filed the federal action on behalf of entities that were in receivership. State Court Judge Anderson granted the Receiver's contempt motion and enjoined Ayoub from filing additional actions without leave of the court. Ayoub thereafter filed a State Court case, styled *Ayoub v. Szantner*, which was assigned to State Court Judge Nanci Grant. She dismissed that case, recognizing that Ayoub was again attempting to pursue claims that belonged to corporate entities, and reminding Ayoub that his status as a corporation's owner does not give him personal standing to assert a claim for the corporation's lost profits, that claim belonging to the corporation.

Ayoub appealed Judge Grant's dismissal of his State Court action to the Michigan Court of Appeals, claiming he only filed that case to prevent the running of the applicable statute of limitations. The Court of Appeals, seeing no merit in this argument and noting that Ayoub raised the specious statute of limitations argument only to circumvent the broad prohibitions in the State Court's receivership order, affirmed Judge Grant's order dismissing Ayoub's Complaint.

Following that affirmance on appeal, Judge Anderson sanctioned both Ayoub and Gappy for continuing to file actions in violation of the court's previous order. In the months leading up to Judge Anderson's order, the Receiver engaged in efforts to collect on the Default Judgment. As part of those efforts, the Receiver conducted a creditor's examination ("Creditor's Exam") of

Ayoub on February 20, 2013. The Receiver made clear at the Creditor's Exam that the collection efforts were against International and Associates only, not Ayoub individually. A careful review of the transcript of that Creditor's Exam indicates the Receiver took great pains to make that clear and that he sought only assets of International and Associates, reflecting his awareness of Ayoub's personal bankruptcy discharge (See further details in the Dismissal Opinion). The sum of the foregoing requires a conclusion that there is no plausible argument Ayoub personally was being pursued in connection with activities designed to collect on the Default Judgment, it being evident his involvement was occasioned by a need to obtain facts incident to attempts to effect collection of that judgment from the judgment debtor(s).

Despite that, Ayoub filed this adversary proceeding claiming those collection efforts violated his bankruptcy automatic stay and his discharge injunction. This Court concludes his actions in that regard are but a continuation of his now perpetual inability and/or refusal to understand and accept the differentiation between his ownership of stock in a corporation and the assets held by and belonging to that corporation- something this Court explained in its rationale for the Dismissal Opinion.

## The Motions for Sanctions

Defendants Motions for Sanctions against Ayoub assert relief pursuant to Federal Rule of Bankruptcy Procedure 9011.[3] That Rule requires an attorney who submits a pleading to certify that the pleading is not presented for improper purposes and that its contents are justified by existing law or by a legitimate argument for the extension or modification of existing law. When a pleading violates Rule 9011, a court may sanction the responsible party and/or his attorney.

---

[3] The Motions initially were filed separately, with some of them occurring before the Court dismissed Ayoub's Complaint and some occurring after. However, the Motions are nearly identical and all raise the same arguments. The Defendants eventually filed a Combined Brief supporting the Motions. As a result, the Court addresses the Motions as one.

5

The Defendants argue Ayoub and Gappy, his attorney, both violated Rule 9011 by pursuing frivolous legal theories that had no merit and served only to harass the Defendants. Defendants quote this Court's unappealed from Dismissal Opinion and Order Granting Defendants' Motion to Dismiss, pointing out that Ayoub "ignores basic principles of law as to the distinction and separateness of a corporate entity and its shareholders." (Dkt. 49). The Defendants also claim Ayoub's adversary proceeding was vexatious and a form of gamesmanship.

Ayoub responds by claiming he conducted himself in good faith throughout this litigation. He supports his position by noting that this Court gave him leave to reopen his bankruptcy for the express purpose of filing the instant adversary proceeding. Finally, Ayoub points out that some of the Defendants did not satisfy the safe harbor provision of Rule 9011, which some of them concede. They address that matter by arguing compliance by some of them protects the others or, alternatively, this Court should sanction Ayoub and Gappy on its own authority.

Under Fed. Bank. Pro. 9011(a), an attorney of record for a represented party must sign every petition, pleading, or motion submitted to a court. Under 9011(b), that signature constitutes certification, in pertinent part, that the signer has made reasonable inquiry and to the best of his knowledge the subject document:

> (1) is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, or other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of exiting law or the establishment of new law.

Fed. R. Bankr. Proc. 9011(b)(1) and (2) (2016).

6

Subsection (c)(2)(A) of Rule 9011 also is relevant to this matter. According to that provision, a court cannot impose monetary sanctions on a represented party for a violation of Federal Rule of Bankruptcy Procedure 9011(b)(2), which governs claims, defenses, and other legal contentions contained in a submission to a court.

When determining whether a party violated Rule 9011, a court cannot use the benefit of hindsight; instead, it must consider whether the signer's conduct was reasonable at the time he submitted the subject filing. *B-Line, LLC v. Wingerter (In re Wingerter),* 594 F.3d 931, 939 (6th Cir. 2010). A court also should consider the surrounding circumstances when determining whether a signer acted reasonably. *Mann v. G & G Manufacturing, Inc.*, 900 F.2d 953, 958 (6th Cir.), cert. denied, 498 U.S. 959, 111 S.Ct. 387, 112 L.Ed.2d 398 (1990). The simple fact that a court rejects a party's arguments does not justify sanctions under Rule 9011. *In re Fordu*, 209 B.R. 854, 867 (BAP 6th Cir. 1997).

Finally, a bankruptcy court has the authority to award sanctions apart from the confines and requirements of Rule 9011. *Glatter v. Mroz,* 65 F.3d 1567 (11th Cir. 1995). However, to invoke this inherent power to sanction, a court must find that the offending party acted in bad faith. *Id*. at 1575.

<u>Rule 9011</u>

A.  **The Safe Harbor Issue**

Before filing a motion for sanctions under Rule 9011, a party must serve on its opponent a copy of the proposed motion with a description of the specific conduct alleged to violate Rule 9011. Service of this proposed motion must satisfy Federal Rule of Bankruptcy Procedure 7004, governing proper service of documents, and must occur at least 21 days before the motion is formally filed. A warning letter or similar correspondence is not sufficient to satisfy the service

7

requirement in Rule 9011. *Penn, LLC v. Prosper Bus. Dev. Corp.*, 773 F.3d 764, 767 (6th Cir. 2014) quoting *Roth v. Green*, 466 F.3d 1179, 1192 (10th Cir. 2006).

The following Defendants satisfied the safe harbor requirement: Yamin, Lambert, Beier, Szantner, and RSA. The Receiver made no efforts to satisfy the safe harbor requirement. He is not entitled to Rule 9011 relief but might be able to avail himself of this Court's inherent authority to award sanctions.

The remaining Defendants—FirstMerit and Weltman—are in a gray area. FirstMerit and Weltman did not technically serve their Motion for Sanction on Ayoub, as Rule 9011 and Rule 7004 require. However, they did notify him via email of their intent to pursue sanctions and sent him a copy of their proposed motion. The issue is whether this informal process satisfied Rule 9011. The Court finds it does not, as it fails to satisfy the requirements of Rule 7004. Like the Receiver, though, FirstMerit and Weltman may seek relief under the Court's noted inherent power to sanction.

Therefore, the Court must apply two different analyses to the moving parties, to wit: (a) The Court will analyze the Motions of Yamin, Lambert, Beier, Szantner, and RSA ("the Rule 9011 Defendants") under Rule 9011; and (b) The Court will analyze the Motions of the Receiver, FirstMerit, and Weltman ("the Non-Rule 9011 Defendants") under law governing the Court's inherent authority to sanction an offending party.

**B.     Sanctions in Favor of the Rule 9011 Defendants**

As noted, the Rule 9011 Defendants complied with the Rule's safe harbor requirements and therefore are entitled to the Rule's protections. The Court finds that with regard to those Defendants, Ayoub's adversary complaint and his attorney Gappy's efforts to prosecute same violated Federal Rule of Bankruptcy Procedure 9011(b)(1) and (2). Those efforts were designed

8

to cause, and had the result of effecting, unnecessary delay, and they needlessly increased the cost of litigation. They were frivolous and not supported by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

In making this determination, the Court must, as noted, look to the reasonableness of the Ayoub's and Gappy's conduct at the time it occurred and in the context of the Court's Dismissal Opinion. In this case, the Court finds that by the time they began this adversary proceeding Ayoub and Gappy knew or reasonably should have known that their legal theories were unsupportable and had no basis or merit (i.e. were frivolous).

1. <u>Conduct Violating Rule 9011(b)(1)</u>

Pursuant to Rule 9011(b)(1), when signing a pleading or motion an attorney certifies that he is not offering that pleading or motion for an improper purpose, such as to cause unnecessary delay or needlessly increase the cost of litigation. This Court can only conclude that Ayoub's pursuit of relief here was done to cause an unnecessary delay to and to needlessly increase the cost of Defendants' efforts to collect on a money judgment against corporate entities and not him personally.

Ayoub is a shareholder in corporate entities against which the Defendants have a money judgment. As noted, he has no credible argument that he is being or has been directly pursued, as an individual, by Defendants at any time since receiving the protection of the automatic stay or discharge injunction. The judgment issued was against corporate entities alone. The amended complaint that led to that judgment was against corporate entities alone. Additionally, the creditor's exam involving Ayoub was aimed at collecting from corporate entities alone, the receiver taking pains to avoid even the appearance he was pursuing Ayoub individually.

It is an inherent risk of stock ownership that one's stock or interest in a corporate entity might be or become worth less or worthless by reason of the application or seizure of corporate assets to pay corporate debt. The application or seizure of corporate assets simply cannot be said alone to be,or have been the result of, or be synonymous with, or be characterized as, an effort to collect a corporate debt from the holder of the stock or interest who has no personal liability for that debt.

Ayoub's actions had the effect of unnecessarily delaying Defendants' efforts and needlessly increasing their litigation costs (i.e. he was trying everything he could to protect whatever was the value of his interest in these entities). When considering all of the circumstances at that time they occurred, there is therefore no reasonable argument that the Defendants were directly pursuing Ayoub as an individual, and the Court concludes that he has caused unnecessary delay and needlessly increased litigation costs, in violation of Rule 9011(b)(1), in an effort to protect what he saw as the value of his interest in the subject corporate entities.

Ayoub also can be seen as engaging in forum shopping that has the effect of causing unnecessarily delay and needlessly increasing litigation costs for the Defendants. In his pleadings, Ayoub notes that he sought relief in this Court only "after just about every avenue for relief for Mr. Ayoub was exhausted at the state level." (Dkt. 85 at Page 16). This statement reinforces a conclusion borne out by the other facts—that Ayoub is intent on dragging this matter out indefinitely, moving from one tribunal to the next until he finds a court sympathetic to his argument. This conduct violates Rule 9011(b)(1).

Gappy, the attorney, is also implicated regarding these violations of Rule 9011(b)(1). As Ayoub's counsel, he was responsible for developing and implementing a legal strategy that

complies with the applicable law and rules. Instead, on behalf of his client he assisted in and made legally possible, procuring unnecessary delays and actions that led to increased litigation costs, and facilitated the indicated forum shopping. He signed and submitted to this Court pleadings and motions that were not offered for the required proper purposes and his standing as the attorney does not insulate him from its consequences. For all of these reasons, the Court concludes both Ayoub and Gappy violated Rule 9011(b)(1).

    2.    <u>Conduct Violating Rule 9011(b)(2)</u>

Rule 9011(b)(2) governs the submission of claims and legal contentions to the Court. Accordingly, it addresses what are primarily legal decisions involving legal interpretations and strategies. These decisions are largely within the purview and decision making of counsel, made in consultation with, and, by or with consent or direction of the client. Rule 9011(c)(2)(A) provides that a court can impose financial sanctions for a violation of Subsection (b)(2) only on legal counsel, not the client. Therefore, because the Court cannot sanction Ayoub under Rule 9011(b)(2), it directs this portion of this opinion at Gappy.

According to Rule 9011(b)(2), a signer of legal pleadings and motions certifies that the claims, defenses, or other contentions contained therein are justified by existing law or by nonfrivolous argument to extend, modify, or reverse existing law or establish new law. Here, Gappy violated this Rule by prosecuting arguments that contradicted existing law and were not supported by a nonfrivolous argument to extend or change existing law.

As the Court notes, there is no credible argument that Defendants have pursued Ayoub individually to collect the debts owed by the corporate entities at issue. Accordingly, Gappy and Ayoub are left to argue that the Defendants were pursuing Ayoub indirectly, a position they supported by claiming Ayoub and the corporate entities in which he owns shares are one and the

same (a position which might be adverse to Ayoub or he might want to reconsider in other contexts). The argument, then, is that Defendants violated Ayoub's discharge injunction and automatic stay by pursuing collection of a money judgment against corporate entities in which he had an ownership interest. However, Gappy knew long before this adversary proceeding that this argument was without merit.

Gappy was told at least twice, before this adversary case began, that this position is without merit. At least two State Court judges made clear to Gappy that under Michigan law a corporation and an individual owning stock in that corporation are separate and distinct legal entities. The very purpose of the corporate structure is to shield its individual shareholders from liability when that corporation suffers legal hardship and liability. This is a basic tenet of corporate law known to any student who has taken a law school corporations class, let alone a practicing attorney. *See Morris v. Schnoor*, No. 315006, 2014 WL 2355705, at *31 (Mich. Ct. App. May 29, 2014) appeal denied, 859 N.W.2d 514 (Mich. 2015). Gappy knew or should have known that corporate assets do not become part of an individual debtor's bankruptcy estate even if that individual is the sole shareholder. *See In re D'Alessio*, No. 8-08-72819-REG, 2014 WL 201871, at *9 (Bankr. E.D.N.Y. Jan. 17, 2014).

Gappy's recited conduct is even more problematic considering how many and how often multiple courts reminded him of this well-settled law, and keeping in mind that one State Court ordered that he and Ayoub not file any more lawsuits regarding the instant issues without that court's permission. In response and on Ayoub's behalf, Gappy did file another case (which case was dismissed immediately) seeking the exact same relief he already had been told was not available to Ayoub. After that case was dismissed and Gappy and Ayoub were sanctioned, Gappy proceeded to present the same meritless arguments to this Court. He essentially has been

shopping for a court in which to seek previously denied, and deniable, relief not available to Ayoub under Michigan law (i.e. another bite at the same apple). Despite Gappy's argument otherwise (discussed below), there is no nonfrivolous argument to extend, change, or reverse the long-settled law that precludes the requested relief.

The one attempt Gappy made to argue for an extension or application of existing law to Ayoub's situation also is without merit. He noted that there sometimes arise unusual circumstances when a bankruptcy court may stay proceedings against non-bankruptcy co-defendants. These circumstances may exist when there is such identity between the debtor and third-party defendant that the debtor could be viewed as the real party in interest. *See. A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. Va. 1986). Similarly, a non-bankrupt co-defendant may enjoy the protection of the automatic stay if the extension contributes to the debtor's rehabilitation efforts or the debtor and bankrupt are "closely related." *In re S.I. Acquisition, Inc.*, 817 F.3d 1142, 1147 (5th Cir. Tex. 1987).

These principles might have been helpful to Gappy and Ayoub's argument if the Court had stayed proceedings against Associates or International, but it had not. In fact, Gappy and Ayoub never asked that this Court stay proceedings against Associates or International, and regardless such a stay would not be proper. Given the clear status of Michigan law regarding the distinction between a corporate entity and its owners/shareholders, there does not exist "such identity" between Ayoub and the corporations justifying such drastic action.

Gappy also argues that this Court should not sanction him or Ayoub because doing so would amount to holding them responsible for violating the orders of another tribunal. That argument misses the point. This Court is not sanctioning either of them for violating orders of

13

any other court.  The Court is sanctioning Gappy and Ayoub for violating Federal Rule of Bankruptcy Procedure 9011.

However, that does not mean violation of or conduct in reaction to prior State Court orders is irrelevant to this proceeding.  Gappy is wrong when he claims that what he "may have done before another tribunal is of no consequence to the matter before this Court." (Dkt. 85 at page 16).  What happened before the various state court judges is quite relevant to evaluating the merits of and/or the essentially frivolous and unsupportable continued prosecution of the same claims.  Gappy's interactions with other tribunals make clear that he knew or should have known, before filing this adversary proceeding, that the position he and his client were taking was without merit.   Accordingly, under the recited circumstances this Court can only conclude that Gappy's efforts here were frivolous.

In support of his position, Gappy relies heavily on the fact that this Court granted Ayoub leave to file this adversary complaint in the first place.  He argues that by pursuing the adversary complaint, Ayoub "did what this Court granted him permission to do and nothing more." (Dkt. 85 at page 20).  That argument misapprehends the impact of a court's decision to reopen a case. The act of reopening a case is ministerial and has no independent legal significance. *In re Oglesby, III*, 519 B.R. 699, 703 (N.D. Ohio 2014); *Bloxsom v. Aegis Mortgage Elect. Reg. Systems, Inc.*, 389 B.R. 52, 60 (W.D. Mich. 2008).  It determines nothing about the merits of a case and affords no independent relief to the moving party.  *Oglesby*, 519 B.R. at 703. Accordingly, the Court allowing Ayoub to file a complaint was not a comment on the merits contained therein and is irrelevant to the instant Motions.

For all of these reasons, the Court finds a violation of Rule 9011(b)(2) of the Federal Rules of Bankruptcy Procedure with regard to the Rule 9011 Defendants.

C. **Sanctions in Favor of the Non-Rule 9011 Defendants**

The Non-Rule 9011 Defendants did not comply with Rule 9011's safe harbor provision and they do not receive the Rule's protection. However, as noted above this Court has the inherent authority to sanction Gappy and/or Ayoub for conduct directed at the Non-Rule 9011 Defendants, if the Court finds either acted in bad faith. Whether a party or his attorney acted in bad faith requires a court to consider the totality of the circumstances. *In re Cadillac by DeLorean and DeLorean Cadlilac, Inc.*, 265 B.R. 574, 582 (N.D. Ohio 2001); *See Adell v. John Richards Homes Building Co., LLC*, 439 F.3d 248, 254-55 (6th Cir. 2006) (addressing bad faith filing of bankruptcy petition); *see also Hardin v. Caldwell*, 851 F.3d 852 (6th Cir. 1988) (applying totality of circumstances test when considering whether debtor acted in bad faith in Chapter 13 case).[4]

While there is no comprehensive definition of "bad faith" conduct, there are guidelines to help one recognize such conduct.. For example, using the judicial process for an improper purpose or taking action that is without basis in law or fact both constitute bad faith conduct. *See Adell,* 439 F.3d at 255; *see also Cadillac,* 265 B.R. at 582. For the following reasons, this Court finds that both Gappy and Ayoub acted in bad faith with regard to the Non-Rule 9011 Defendants, and appropriate sanctions are in order.

Gappy and Ayoub utilized judicial process for improper purposes. Together they filed case after case for the purpose of improperly delaying Defendants' efforts to collect on a

---

[4] The Rule 9011 Defendants were harmed by the same bad faith conduct that justifies sanctions in favor of the Non-Rule 9011 Defendants under the "bad faith" standard. That conduct would support sanctions in favor of the Rule 9011 Defendants under the "bad faith" standard applied to the Non-Rule 9011 Defendants, in addition to the sanctions imposed per Rule 9011.

15

properly-obtained money judgment against corporate entities. They did so even after being told multiple times that their position was without merit, and even after being sanctioned for pursuing their baseless claims.

Ayoub and Gappy also engaged in what can be described as improper forum shopping, offering the same baseless argument to one court after another in the hope that they would find a sympathetic ear. When viewed as part of the totality of circumstances described throughout this opinion, Gappy and Ayoub's use of the judicial system for improper purposes constitutes bad faith and justifies this Court's imposition of sanctions against them.

As the Court described above, Gappy and Ayoub took action that had no support in law. Despite being told repeatedly that their legal position was without merit, Gappy and Ayoub continued to prosecute claims that had no legal basis. They also filed a new lawsuit regarding the debt at issue in direct contravention of a clear State Court order telling them to cease file such cases without prior court permission. The Court recognizes that Gappy, as counsel, is primarily responsible for decisions regarding legal strategy. However, that does not relieve Ayoub of responsibility for the authorizing, approving, and directing prosecution of his claims.

The Court's inability to sanction Ayoub, the represented party, for violations of Rule 9011(b)(2) does not prevent the Court from considering his role in the situation as regards the Non-Rule 9011 Defendants and the Court's inherent sanction power. It does not take legal training to understand the clear and direct statements of multiple State Courts when they tell you that your case is without merit. Ayoub is an intelligent man who knew or should have known, before filing his adversary complaint, that no relief was available to him. Additionally, the Court can reasonably infer that Ayoub's desire to protect his interest in the subject entities was a driving force in this litigation. Accordingly, Ayoub bears responsibility for the problems created

here and cannot avoid sanctions simply because he was may not have directed the legal strategy that violated the applicable procedural rules. Instead, when viewed as part of the totality of circumstances described throughout this Opinion, the conduct of both Gappy and Ayoub reflects bad faith and justifies the imposition of appropriate sanctions.

<u>The Amount and Nature of the Sanctions</u>

When a pleading or submission violates Rule 9011, a court can sanction the attorneys, law firms, or parties involved in or responsible for the violation. Fed. R. Bankr. Proc. 9011(c) (2016). Here, the Court finds violations of Rule 9011(b)(1), making both Gappy and AYoub subject to sanctions. The Court further finds violations of Rule 9011(b)(2), under which as per 9011(c)(2)(A) only Gappy, the attorney, can be subject to monetary sanctions. The Court exercises its inherent authority to be able to, and does sanction both Gappy and Ayoub for engaging in bad faith conduct.

As to the nature and amount of sanctions, under the Rule(s) the Court can impose sanctions including reasonable expenses and attorney's fees incurred in presenting or opposing the motion. *Id*. However, a court should limit sanctions to what is sufficient to deter repetition of the offending conduct, or to deter comparable conduct by others similarly situated. *Id*. Additionally, a court imposing sanctions must consider the offending party's ability to pay those sanctions. *Orlett v. Cincinnati Microwave, Inc.*, 954 F.2d 414, 419 (6th Cir. 1992).

In doing so, the Court must strike an appropriate balance when determining the amount and nature of sanctions. Compensating the injured party is only a secondary purpose of sanctions. *Id*. The primary goal is to deter repetition of the offensive conduct, which requires imposing sanctions substantial enough that the offending party will feel their weight. *Id*. However, it also requires assessing a sanction that is not so substantial as to be unaffordable.

17

The Court concludes it does not presently have before it sufficient evidence or information to determine the nature and amount of the appropriate sanctions or who should be responsible for what and to whom that individual should be responsible. Accordingly, the Court needs to receive additional briefing and to conduct a final hearing regarding the such.. By virtue of the fact this Court is retiring on September 30, 2016 and must finally and fully conclude this matter by then, an evidentiary hearing and final arguments on such will be held on **September 21, 2016 at 9:30 a.m.** On or before September 16, 2016 the Movants shall each separately file and serve statements of (a) the specific nature and amount of monetary sanctions they are seeking, and against whom and the manner and rationale for same; and (b) the specific nature of any sought-after non-monetary sanctions and against whom and the manner and rationale for same.

**IT IS SO ORDERED**.

.

**Signed on September 02, 2016**

                                         **/s/ Walter Shapero**
                               **Walter Shapero**
                               **United States Bankruptcy Judge**