I UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHER DIVISION — DETROIT

In re:

Ted Ayoub,    Case No.: 10-62790-wsd
              Chapter 7
  Debtor      Hon. Walter Shapero
_____/

Ted Ayoub,

  Plaintiff,

v.    Adv. Pro. No.: 15-04153

FirstMerit Bank,
Joseph F. Yamin et al.,

  Defendants
_____/

## OPINION AND ORDER ESTABLISHING NATURE AND AMOUNT OF SANCTIONS AGAINST PLAINTIFF TED AYOUB AND PLAINTIFF'S COUNSEL NORTON T. GAPPY

### (A)   INTRODUCTION

On September 2, 2016 this Court entered an Opinion and Order Granting Defendants' Motions for Sanctions ("Sanctions Opinion"). However, the Court did not have sufficient information, at that time, to fix the nature and amount of sanctions against Plaintiff Ted Ayoub ("Ayoub") and his attorney Norton T. Gappy ("Gappy"). Accordingly, the Court established a timeline for determining the amount of sanctions to be awarded to each movant, which timeline included final briefings from the parties and an evidentiary hearing on said issue which was scheduled for Wednesday, September 21, 2016 at 9:30 a.m. That hearing took place as scheduled, with the following parties in attendance either personally or by counsel: Beier Howlett, P.C.; FirstMerit Bank; Lambert Leser; RSA Design Group, LLC; Weltman Wienberg &

Ries, Co., LPA; Joseph F. Yamin; Robert Szantner; and Stephen C. Cooper. Thus, each Defendant that moved for and was awarded sanctions was present at the hearing. However, neither Ayoub nor Gappy appeared for the hearing, nor did anyone purporting to act on behalf of either or both of them. Additionally, the Court did not receive any filings relevant to, or any other communication before the hearing, regarding the aforementioned hearing from Ayoub, Gappy, or anyone purporting to act on behalf of either of them.

The moving Defendants seek sanctions in the following amounts: FirstMerit and Weltman request a total of $25,200.00; RSA and Szantner request a total of $15,951.00; Beier Howlett, Yamin, and Lambert Leser request a total of $26,275.00; and Cooper requests a total of $26,062.60. The total amount of combined sanctions requested by all Defendants is $93,488.60. Each moving Defendant requests that the sanctions it receives be imposed jointly and severally on Ayoub and Gappy. The Defendants also requested an Order prohibiting Ayoub and/or Gappy from filing any further lawsuits regarding the matters raised in or related to this adversary proceeding without prior approval from a judicial authority and an order sealing the record in this adversary proceeding, except for the Court's opinions and orders.

### (B)  **FINDINGS OF FACT**

The facts supporting the Court's award of sanctions are detailed in the Sanctions Opinion at Docket Number 87 and will not be restated here. The Court hereby incorporates all factual findings from the Sanctions Opinion. In addition to those facts, which establish the need to deter the type of conduct engaged in by Ayoub and Gappy, the Court was given other information at

the September 21, 2016 hearing relevant to its determination of the nature and amount of sanctions appropriate against Ayoub and Gappy.[1]

Initially, the Court notes that Defendants RSA and Szantner include in their request for sanctions attorney's fees incurred by their counsel, Lambert Leser, which also is a Defendant in this matter. Lambert Leser also seeks sanctions equivalent to the fees it incurred defending against this adversary proceeding. The Court, based on the record before it, concludes that there is no duplication in the fees sought by RSA, Szantner, and Lambert Leser. The fees Lambert Leser incurred while defending RSA and Szantner were stated to be separate and apart from the fees they incurred defending themselves.

It appears that on or about June 17, 2015, Ayoub sold real property located in Bloomfield Township, Michigan, the sale price of which was $577,000.00. On his bankruptcy schedules Ayoub valued this property at approximately $350,000.00. His bankruptcy schedules did not reference any mortgage or note the existence of any secured creditor in connection with this property. Public records reflect one mortgage being discharged incident to the sale of this property, that apparently being a mortgage Ayoub granted in favor of his son. The Court does not know the balance of that mortgage, although Ayoub testified at his creditor's exam that his son had lent him approximately $500,000.00. The Court has not been given any evidence corroborating this claim of a debt and/or mortgage but assuming such was true, it appears Ayoub may have netted, at a minimum, more than $75,000.00 from the sale of the property.

---

[1] On September 23, 2016 the docket reflects the attempted filing of a Motion on behalf of Ayoub and Gappy seeking a rehearing of the September 21, 2016 hearing. On September 26, 2016 the docket reflects entry of a docket order striking that motion due to procedural deficiencies. Irrespective of that, given the circumstances and particularly the fact that this Court is retiring effective September 30, 2016, and this Court having heard the matter, it should and must act on the subject matter of this order prior to its retirement. It is therefore appropriate that this order be entered and any request for rehearing, whenever filed, be addressed to and heard by the Judge to whom this case is reassigned.

Also relevant is the fact that Ayoub claimed at his creditor's exam that a company in which he previously owned a majority interest was owed in excess of $40 million. Ayoub testified at his creditor's exam that he was pursuing collection of some, if not all of those receivables, so the Court can infer Ayoub's interest in that entity has some value.

Additionally, Ayoub and Gappy made statements in the pleadings in this proceeding that either were untrue, potentially untrue and irrelevant, or were included for improper purposes. Those statements include: accusing Defendant Beier Howlett of committing professional and ethical violations; accusing Yamin or those associated with him of willfully, knowingly, and maliciously violating the Bankruptcy Code; claiming that each named Defendant purposely violated the Code; alleging that Cooper or those acting on his behalf unlawfully took his assets under the auspices of a state court receivership; and accusing the Defendants of acting unlawfully by continuing to enforce and act pursuant to the state court receivership.

**(C)     DISCUSSION**

As noted in the Sanctions Opinion, the Court has the discretion to impose sanctions including reasonable attorney's fees and expenses and a court imposing sanctions should limit those sanctions to what is sufficient to deter repetition of the offending conduct, or to deter comparable conduct buy others similarly situated. *Rentz v. Dynasty Apparel Ind., Inc.,* 556 F.3d 389, 401 (6th Cir. 2009). Additionally, a court imposing sanctions should consider the offending party's ability to pay those sanctions. *Oreltt v. Cincinnati Microwave, Inc*., 954 F.2d 414, 419 (6th Cir. 1992). The primary goal of sanctions is deterrence, not compensation, so the sanctions must be sufficient that the offending party will feel their weight and an appropriate balance between those goals should be struck. *Id*.

4

The Sanctions Opinion makes clear that only substantial sanctions against both Ayoub and Gappy might deter them from engaging in similar conduct in the future and might discourage other potential litigants and their counsel from engaging in similar conduct. As to the appropriate amount of monetary sanctions, the Court finds that it is necessary to impose the full amounts requested by the moving Defendants. This is the best way to potentially deter Ayoub and Gappy from continuing to engage in the indicated sanctionable conduct, and it serves the secondary purpose of compensating the moving Defendants for the resources that Ayoub and Gappy forced them to expend defending against such conduct. Each moving Defendant submitted copies of the legal bills reflecting the expenses incurred in connection with this matter, and inasmuch as this entire adversary proceeding from its initiation was frivolous the Court holds it is appropriate to impose sanctions including fees incurred in defending it from the beginning. The Court has reviewed the legal bills and supporting affidavits submitted by each moving Defendant in this case and finds the rates, hours expended, and total fees and expenses incurred are reasonable.[2]

On the matter of ability to pay it would seem that Ayoub and Gappy should bear the burden on that issue and be required to produce evidence on that subject, specifically on their financial situations with regard to the amounts of the ordered sanctions, so as to permit the Court to have facts upon which it could draw some conclusion on how such might or should affect the sanctions amounts. As to Ayoub, he received his bankruptcy discharge in April 2011 and his Chapter 7 case was closed in September of that year. Ayoub paid the Trustee some funds in

---

[2] To the extent Ayoub or Gappy might assert that any of the fees requested by Defendants were unreasonable for any reason, the Court would note that even assuming some portion of those fees were not reasonable, the unreasonable portions (depending on the amount) might properly be considered as additional separate sanctions, apart from all the fees requested, as a penalty for the sanctioned conduct.

settlement of a claim by the Trustee for Ayoub's equity in his home, held by the entireties, which was then apparently unencumbered by a mortgage. Above are recited facts regarding the sale of that home in 2015 and Ayoub's assertions regarding receivables apparently owed to entities in which his schedules assigned his interest at nominal value. The value is at odds with Ayoub's assertions as to substantial receivables owed to those entities, the ownership interests in which were abandoned to him by the Chapter 7 Trustee when closing the case. That is the existing record as to Ayoub's ability to pay. Given the Court's view that Ayoub has the burden of proving he does not have sufficient ability to pay the imposed sanctions, as part of the process in deciding the amount and liability for sanctions, the Court concludes that he has not met that burden.

As to Gappy's ability to pay, aside from the fact he apparently is a practicing attorney, there is nothing specific in the record regarding his financial situation or resources from which the Court might draw some conclusions as to how such might affect his ability to pay the ordered sanctions and his responsibility for such.

In its Sanctions Opinion, the Court imposed sanctions based on Rules 9011(b)(1) and (b)(2) as well as its own inherent authority. The Court may award sanctions per Rule 9011(b)(1), which Rule prohibits presenting pleadings or motions for an improper purpose, against both Ayoub and Gappy. Sanctions per Rule 9011(b)(2), governing the submission of claims and legal contentions to a court, are awardable only against Gappy. And sanctions issued pursuant to the Court's inherent authority are awardable against both Ayoub and Gappy. Thus, in a typical situation the Court have to allocate the obligations imposed by these sanctions to Ayoub and Gappy in proportion to the offending conduct and its connection to the aforementioned rules. However, in this case it is essentially impossible to distinguish between conduct that contributed

6

to a violation of either applicable provision of Rule 9011 and conduct that justifies the Court exercising its inherent authority. Ayoub and Gappy together engaged in conduct that showed disregard for the applicable rules, laws, and authority of the courts before which they argued. As such, the Court finds that Ayoub and Gappy are jointly and severally liable for all amounts awarded herein, and, said amounts are not diminished or affected by any inability to pay considerations.

### (D) ORDERED SANCTIONS

**(1)** **Monetary Sanctions**

Accordingly, and it is hereby ordered that the following are awarded separate monetary sanctions and monetary judgments, jointly and severally against Ted Ayoub and Norton T. Gappy, in the indicated amounts, with each having the ability to separately effect collection of same in accordance with applicable law:

(a) FirstMerit Bank and Welstman, Wienberg, & Ries Co, LPA……….$25,200 payable to the trust account of their counsel of record in this case and devided between them as they shall see fit;

(b) RSA Design Group, LLC and Robert Szantner……….$15,951 payable to the trust account of their counsel of record in this case and divided between them as they shall see fit;

(c) Beier Howlett, P.C., Joseph Yamin, and Lambert Leser, P.C………..$26,775 payable to the trust account of their counsel of record in this case and divided between them as they shall see fit;

(d) Stephen C. Cooper……….$15,997 payable to him; and

(e) Cohen, Lerner, & Rabinowitz, P.C. (attorneys for Stephen C. Cooper)……….$10,065.

**(2)** **Non-Monetary Sanctions**

**(a)** **Pre-Filing Restrictions**

Injunctive relief is an appropriate remedy to address the behavior of abusive litigants. *See Feathers v. Chevron U.S.A., Inc.*, 141 F.3d 264, 269 (6th Cir. 1998). While this Court cannot enjoin Ayoub or Gappy entirely from filing future lawsuits, it can impose upon them pre-filing obligations such as requiring them to obtain permission before filing such litigation. *Tropf v. Fidelity Nat'l Title Ins. Co.*, 289, F.3d 929, 940 (6th Cir. 2002). In this case, the imposition of such a pre-filing requirement is warranted. As such, the Court hereby Orders that both Ayoub and Gappy are prohibited from filing any further pleadings or commencing further litigation in the Bankruptcy Court regarding or relating to the matters raised in this adversary proceeding (other than by appeal of the Sanctions Opinion or this Order) without receiving the prior approval for any such filings from the Bankruptcy Court.

**(b)   Sealing of Records**

Federal Rule of bankruptcy Procedure 9018 and 11 U.S.C. § 107(b)(2) allow this Court to enter an order protecting a person "with respect to scandalous or defamatory matter contained in a paper filed" in a proceeding arising under the Bankruptcy Code. As such, a court can seal records that contain material that would cause a reasonable person to alter his opinion of an interested party based on a showing that the material is untrue, potentially untrue and irrelevant, or included for an improper purpose. *U.S.A. v. Associated Community Services, Inc.*, 547 B.R. 236, 240-41 (Bankr. E.D. Mich. 2016). Based upon the noted facts recited and the allegations made by Ayoub and Gappy, the Court concludes and it is hereby Ordered that the entire record of this adversary proceeding, except for the Court's Orders and Opinions, be sealed (subject to unsealing by an appropriate order).

**THE FOREGOING IS SO ORDERED**.

_____

**Signed on September 29, 2016**

                                                    /s/ Walter Shapero
                                                    Walter Shapero
                                                    United States Bankruptcy Judge

9

15-04153-mlo   Doc 96   Filed 09/29/16   Entered 09/29/16 16:27:09   Page 9 of 9