UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                                          Chapter 7

Ted Ayoub,                                                      Case No. 10-62790

    Debtor.                                                Hon. Maria L. Oxholm
_____/

Ted Ayoub,                                                      Adversary Proceeding
                                                                No. 15-04153-mlo
    Plaintiff,
v.

Joseph F. Yamin,
John D. Gwyn,
Weltman, Weinberg & Reis,
  Co, LPA,
Robert Szantner,
RSA Design Group, LLC,
Lambert, Leser,
Stephen C. Cooper,
Beier Howlett, P.C.
FirstMerit Bank, as successor
  in interest to Citizens Bank,
Simon, Galasso & Frantz, PLLC,

    Defendants.
_____/

**OPINION AND ORDER (On Remand)**
**ESTABLISHING NATURE AND AMOUNT OF SANCTIONS**

    This matter is before the Court on remand from the United States District Court of the

Eastern District of Michigan (Hon. Matthew F. Leitman) for a redetermination of the Sanctions

Establishment Order (ECF No. 96) entered by the Court's predecessor in this adversary

proceeding. *In re Ayoub*, No. 16-cv-13687, 2017 WL 4161110 (E.D. Mich. September 20,

2017). After an evidentiary hearing and a review of applicable law the Court awards sanctions

for Defendants Joseph F. Yamin ("Yamin"); Lambert Leser ("Lambert"); Beier Howlett, P.C.

("Beier"); Robert Szantner ("Szantner"); and RSA Design Group, LLC ("RSA") and against Ted Ayoub (Ayoub) and his attorney Norton Gappy (Gappy), jointly and severally, under Federal Rule of Bankruptcy Procedure 9011(c) in the amount of $37,417.50. The Court additionally awards sanctions for Defendants Stephen C. Cooper ("Cooper"); and FirstMerit Bank, *as successor in interest to Citizens Bank* ("FirstMerit")[1] and against Ayoub and Gappy, jointly and severally, pursuant to the Court's inherent authority in the amount of $32,715.00. This Court also orders certain other injunctive relief.

## I. <u>Procedural History</u>

On July 16, 2010, Ayoub filed for Chapter 7 Bankruptcy. Ayoub received a discharge on April 18, 2011 and his Chapter 7 case was closed on September 21, 2011. In October 2014, Ayoub, represented by Gappy, moved under 11 U.S.C. § 350 to reopen his bankruptcy case in order to file an adversary proceeding against the above-named Defendants. Over Defendants' objections, the Court granted Ayoub's motion to reopen and permitted him to file a complaint initiating this adversary proceeding. However, in doing so, the Court made clear it was not pre-judging the merits of Ayoub's claims. (*In re Ayoub*, 2017 WL 4161110, at *10; Tr. At 29-31, Dec. 11, 2014, ECF No. 117). Ayoub's complaint was based upon his arguments that:

> (a) the post-petition Default Judgment against International violated the automatic stay and/or discharge injunction in this, his personal bankruptcy case, and is thus void *ab initio*; and (b) the Creditors' Exam violated the discharge injunction in this, his personal bankruptcy case, both thus entitling Ayoub to appropriate damages and relief.

(Op. Grant Def.'s Mot. Dismiss, 4, ECF No. 49). Defendants filed motions to dismiss the Complaint. This Court's predecessor granted the motions finding the "proceedings relating to entry of the Default Judgment (and indeed the subsequent proceedings designed to effect

---

[1] Michael Herzoff, attorney for FirstMerit and Weltman, Wienberg, & Reis Co., LPA ("Weltman"), requested attorney's fees for representing FirstMerit, not Weltman.

collection thereon), directed as they were to International and not to Ayoub, did not violate either the automatic stay or the discharge injunction in or arising from Ayoub's individual bankruptcy case."[2]  (Op. Grant Def.'s Mot. Dismiss, 6).  The Court explained, "because a corporation has a separate identity from its owners, corporate assets do not become part of the bankruptcy estate of an individual debtor who owns stock in that corporation, even if he is the sole shareholder."  (Op. Grant Def.'s Mot. Dismiss, 5).  Ayoub's motion for reconsideration was denied.  (Or. Deny Pl.'s Mot. Recons., ECF No. 54).

Subsequently, eight of the ten Defendants filed motions seeking sanctions against both Ayoub and Gappy.  On September 2, 2016, this Court's predecessor entered an order granting Defendants' motions for sanctions, hereinafter "Sanctions Determination Order."  (Sanctions Det. Or., ECF No. 87).  This Court adopts the factual and legal findings set forth therein.  Of significance for this Court's determination of the amount and nature of the sanctions are the following rulings contained in the Sanctions Determination Order.

The Court awarded sanctions in favor of Yamin, Lambert, Beier, Szantner, and RSA ("the Rule 9011 Defendants") and against Ayoub and Gappy finding,

> Ayoub's adversary complaint and his attorney Gappy's efforts to prosecute same violated Federal Rule of Bankruptcy Procedure 9011(b)(1) and (2) these efforts were designed to cause, and had the result of effecting, unnecessary delay, and they needlessly increased the cost of litigation. They were frivolous and not supported by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

(Sanctions Det. Or., 8-9).

The Court opined that "by the time they began this adversary proceeding Ayoub and Gappy knew or reasonably should have known that their legal theories were unsupportable and had no basis or merit (i.e. were frivolous)."  (Sanctions Det. Or., 9).

---

[2] Ayoub is the shareholder in the corporate entities against which the Defendants have a money judgment.

3

15-04153-mlo    Doc 146    Filed 05/14/18    Entered 05/15/18 09:54:00    Page 3 of 26

The Court specifically found that Ayoub's conduct violated Rule 9011(b)(1) concluding,

> he has no credible argument that he is being or has been directly pursued, as an individual, by Defendants at any time since receiving the protection of the automatic stay or discharge injunction. The judgment issued was against corporate entities alone. The amended complaint that led to that judgment was against corporate entities alone. Additionally, the creditor's exam involving Ayoub was aimed at collecting from corporate entities alone, the receiver taking pains to avoid even the appearance he was pursuing Ayoub individually.

(Sanctions Det. Or., 9).

The Court additionally found Ayoub had engaged in forum shopping evidencing his "intent on dragging this matter out indefinitely, moving from one tribunal to the next until he finds a court sympathetic to his argument." (Sanctions Det. Or., 10).

> Furthermore, the Court found Gappy, as Ayoub's counsel, violated Rule 9011(b)(1) by procuring unnecessary delays and actions that led to increased litigation costs, and facilitated the indicated forum shopping. He signed and submitted to this Court pleadings and motions that were not offered for the required proper purposes and his standing as the attorney does not insulate him from its consequences.

(Sanctions Det. Or., 11).

The Court also found that Gappy violated Rule 9011(b)(2) "by prosecuting arguments that contradicted existing law and were not supported by a nonfrivolous argument to extend or change existing law." (Sanctions Det. Or., 11). The Court pointed out that Gappy was told at least twice by two state court judges, before this adversary case began, that his position is without merit, and he was ordered by one State Court not to file another case regarding the instant issues without that court's permission. (Sanctions Det. Or., 12).

As to the remaining Defendants, Cooper, FirstMerit, and Weltman ("the Non-Rule 9011 Defendants"), the Court held that they failed to satisfy the safe harbor requirement of Rule 9011 and were not entitled to Rule 9011 relief. Nonetheless, the Court awarded sanctions in their favor under the Court's inherent authority to sanction an offending party, finding both Gappy

and Ayoub acted in bad faith as to these defendants by utilizing the judicial process for an improper purpose. (Sanctions Det. Or., 15). The Court relied on the same conduct warranting sanctions under Rule 9011 as forming the basis for bad faith. (Sanctions Det. Or., 15-17). Namely--filing case after case for the improper purpose of delaying Defendants' collection efforts, forum shopping, and taking action that had no support in law--*all* despite being told repeatedly that their legal position had no legal merit. (Sanctions Det. Or. 15-17).

The Court reserved the determination of the nature and amount of the appropriate sanctions providing the parties with the opportunity to present sufficient evidence and additional briefing before conducting an evidentiary hearing on September 21, 2016. (Sanctions Det. Or., 18). Neither Gappy nor Ayoub appeared for the separate evidentiary hearing to determine the amount of sanctions. The hearing was conducted in their absence and the matter was taken under advisement. While the matter was under advisement, Ayoub and Gappy filed a Motion for Rehearing of the Evidentiary Hearing that was denied. (Pl. Mot. Reh'g, ECF No. 95).

Subsequently, the Court's predecessor issued an Opinion and Order Establishing the Nature and Amount of Sanctions wherein the Court found it "necessary to impose the full amounts requested by the moving Defendants[,] … to potentially deter Ayoub and Gappy from continuing to engage in the indicated sanctionable conduct," and to compensate "the moving Defendants for the resources that Ayoub and Gappy forced them to expend defending against such conduct." (Sanctions Est. Or., 5, ECF No. 96). Notably, the Court found Ayoub and Gappy failed to meet their burden of proving their inability to pay the imposed sanctions. (Sanctions Est. Or., 5). The Court also indicated "Ayoub and Gappy made statements in the

pleadings in this proceeding that either were untrue, potentially untrue and irrelevant, or were included for improper purposes." [3] (Sanctions Est. Or., 4).

The Court ordered the following sanctions: (1) $93,988 owed jointly and severally by Ayoub and Gappy to defendants[4]; (2) Ayoub and Gappy are enjoined from litigation related to the subject matter of the Adversary Proceeding without receiving prior approval of this Court; and (3) other than the Court's opinions and orders, the record of the Adversary Proceeding are sealed.  (Sanctions Est. Or., 7-8.)

Ayoub and Gappy appealed the Sanctions Determination Order and the Sanctions Establishment Order to the United States District Court for the Eastern District of Michigan.  The District Court, Judge Matthew F. Leitman presiding, affirmed the Sanctions Determination

---

[3] Those statements include:

> accusing Defendant Beier Howlett of committing professional and ethical violations; accusing Yamin or those associated with him of willfully, knowingly, and maliciously violating the Bankruptcy Code; claiming that each named Defendant purposely violated the Code; alleging that Cooper or those acting on his behalf unlawfully took his assets under the auspices of a state court receivership; and accusing the Defendants of acting unlawfully by continuing to enforce and act pursuant to the state court receivership.

(ECF No. 96, p 4).

[4]  The sanctions were broken down as follows:

> (a) FirstMerit Bank and Welstman, Wienberg, & Ries Co, LPA …$25,200 payable to the trust account of their counsel of record in this case and divided between them as they shall see fit;

> (b) RSA Design Group, LLC and Robert Szantner…$15,951 payable to the trust account of their counsel of record in this case and divided between them as they shall see fit;

> (c) Beier Howlett, P.C., Joseph Yamin, and Lambert Leser, P.C…$26,775 payable to the trust account of their counsel of record in this case and divided between them as they shall see fit;

> (d) Stephen C. Cooper…$15,997 payable to him; and

> (e) Cohen, Lerner, & Rabinowitz, P.C. (attorneys for Stephen C. Cooper)………$10,065.

Order.  *In re Ayoub*, 2017 WL 4161110, at *13.  The District Court recognized "[t]his case and the related state-court proceedings underlying this action have a long and tortured history[,]" *Id.* at 2, and agreed that "an award of sanctions was especially appropriate in light of the fact that … the state courts had repeatedly rejected Ayoub's efforts to conflate his personal status with that of the corporations in which he owned an interest."  *Id.* at 13.

However, the District Court vacated the Sanctions Establishment Order because "the Bankruptcy Court should not have entered the Sanctions Establishment Order without re-scheduling the evidentiary hearing that Gappy failed to attend and giving Ayoub and Gappy a full opportunity to present evidence and argument with respect to the requested sanctions."  *Id.* Accordingly, the District Court remanded the matter to this Court for further proceedings consistent with the District Court's Order:

> [I]ncluding allowing Gappy and Ayoub to present evidence and argument opposing the nature and amount of Defendants' requested sanctions.  Following the presentation of evidence and argument by Gappy and Ayoub (and any other proceedings or evidentiary submissions the Bankruptcy Court deems appropriate), the Bankruptcy Court, guided by relevant Sixth Circuit and other precedent concerning the factors to consider when imposing sanctions, may enter a new order establishing the nature and amount of sanctions it deems appropriate.

*Id.* 15-16.  The District Court noted that the Sanctions Establishment Order was vacated for procedural, not substantive, reasons and that "[n]othing in this Order shall in any way preclude the Bankruptcy Court from imposing the same sanctions imposed in the Sanctions Establishment Order, if, after reviewing the evidence and argument the court deems those sanctions appropriate."  *Id.* at16 n 4.

## II.     Findings of Fact

The Court conducted the hearing on the "nature and amount" of the requested sanctions on February 6, 2018 and April 6, 2018.[5] Counsel for the various defendants and Attorney Gappy, appearing on behalf of himself and on behalf of plaintiff Ayoub, were present on February 6, 2018. Ayoub did not attend and Gappy was approximately forty-five minutes late for the hearing. Neither Gappy nor Ayoub attended the continued hearing held on April 6, 2018.

Trent Collier (Collier), attorney for defendants Joseph Yamin, Beier Howlett, P.C., and Lambert Leser was the lead attorney for all Defendants. Collier's invoices show legal fees and expenses incurred from February 2015 to September 2016 for a total of $26,275.00, including $128.56, in costs for work by Collier and Michael J. Sullivan (Sullivan), another attorney from his firm. (Exhibit 4). A review of the invoices shows that two attorneys worked on this case and billed between $157.50 and $225.00 an hour for a total of 136 hours. Collier spent 123.6 hours on the file, Sullivan 12.4 hours. According to Table 4 of the State Bar of Michigan Economics of Law Practice Survey (2014) (*Economics of Law Practice*) (Exhibit 3), the mean hourly rate for an attorney of Collier's experience of 12 years is $260.00. No testimony was offered regarding Sullivan's years of experience. Finally, certain entries are redacted on the invoice. The redactions appear to be related to communication between Collier and his clients.

Joseph Yamin (Yamin), attorney for defendants Robert Szantner and RSA Design Group, has been an attorney for 36 years and is a partner at Lambert Lesser, Attorneys at Law. His hourly billing rate on this file was $325.00 for 48.8 hours. He did not compare his rate to the *Economics of Law Practice*. However, a review of Table 4 shows that the mean rate by years in practice is $285.00. Yamin used Collier's work product as there was "no reason to reinvent the

---

[5] The evidentiary hearing was originally scheduled for November, 27, 2017, but was adjourned by stipulation of the parties. (ECF No. 131)

wheel" and Collier was the lead attorney for the defendants. Pleadings filed by Yamin are tailored to his client. Yamin charged $15,860.00 to his clients for work from the reopening of the Chapter 7 case through the first sanctions hearing. (Exhibit 7).

Joshua Lerner (Lerner), attorney for the court-appointed receiver, Cooper, presented his bill for fees and costs in the amount of $15,874.75 for 55.05 hours.[6] (Exhibit 8). The bill includes worked performed by attorney Stephen Z. Cohen (Cohen) and Lerner who both have experience as creditor attorneys in bankruptcy. Cohen has been an attorney for 40 years and Lerner has been an attorney for 24 years. Both initially charged $325.00 an hour, but later reduced the rate to $300.00 an hour due to a longstanding relationship with their client. A majority of Lerner's hours were billed at the lower rate. According to Table 7 of the *Economics of Law Practice*, the mean hourly rate for attorneys in this area of practice and with their experience is $327.00. The entries on Exhibit 8 are not detailed and are vague as some were made from memory and not recorded simultaneous to the work performed. In addition, the Motion to Dismiss (ECF No. 20) filed by Lerner on behalf of his client contains no legal authority. Finally, 14 hours in attorney fees are billed for work performed on the District Court Appeal.

Cooper did not appear at the hearing. His bill of $12,672.50 was admitted as Exhibit 9. Cooper is the appointed receiver in the state court, and a defendant in this adversary proceeding. The Court does not have any evidence regarding Cooper's years of practice, but he is a former state court judge.

Michael Herzoff (Herzoff), the attorney for FirstMerit and Weltman, Weinberg & Ries, P.C., requests attorney fees of $25,200.00 for 91.5 hours of work for FirstMerit. (Exhibit 2) The

---

[6] The bill presented by Mr. Lerner totaled $16,774.75. Mr. Lerner testified that an entry for $900.00 on September 16, 2016 was a charge belonging to another file and therefore, the correct total was $15,874.75.

9

bill includes the work of three attorneys, Herzoff, William Clos (Clos), and Stuart Best (Best). Herzoff has been an attorney for 30 years and practices in the areas of business litigation and bankruptcy. Herzoff billed at an hourly rate of $275.00 for 88.5 hours of work. When compared to Table 4 and Table 7 of the *Economics of Law Practice*, the mean rate for someone with his experience and in his area of practice is between $279.00 and $327.00 per hour. Some of the entries on Herzoff's bill pertain to the state court proceedings. Other entries, are partially or, completely redacted. Finally, there is no evidence regarding the experience and area of practice for the other two attorneys in Exhibit 2, William Clos (Clos) and Stuart Best (Best). Their work was a minimal 3 hours.

Regarding the sanctioned conduct, Gappy still does not appreciate that the adversary complaint is frivolous. He still maintains that he advanced a viable legal claim based on his legal research. In Gappy's opinion, his legal theory could only be tested in the bankruptcy court. He willfully maintains this belief even when the state court, the Michigan Court of Appeals, and this Court's predecessor have opined that his legal theory is without merit. Specifically, Gappy testified "We still believe we're right, but once Judge Shapero made his final decision, we stopped." (Hr'g Tr. Feb. 6, 2018, 6).

Gappy offered uncorroborated testimony that he is unable to pay sanctions. Gappy testified: "I'm currently going through a divorce. I have been ill for the past several years. My finances are not in the greatest shape right now." (Hr'g Tr. 8). He stated that his income tax returns would show "[a] little under $35,000 in take home income, adjusted gross income. I've been sick for the last two years. In and out of the hospital seven times over three years which is costing me months of work." (Hr'g Tr. 8). Again, Gappy did not produce income tax returns or any medical records regarding his illness.

Aside from his law practice, Gappy "donated" about 15 hours a week to help out at a gas station owned by his father. Additionally, in exchange for office space in a building owned by his father, Gappy helped manage the building.[7]

In terms of assets, Gappy and his now former wife own a house in Bloomfield Hills purchased in August 2016 for the amount of $367,000. The home was paid for with a $100,000 loan from his brother and his former wife paid the balance of the purchase price. Gappy and his former wife were both named on the deed. Regarding the possibility of the house being sold, Gappy testified:

> Q: Is it – is it going – after you bought it, has it been on the market?
>
> A: No.
>
> Q: Do you intend to list it on the market?
>
> A: *I don't know what's going to happen with the divorce.*
>
> Q: Have you spoken to a broker yet?
>
> A: No.
>
> Q: *Is your divorce finalized yet?*
>
> A: *I don't have an opinion yet, no.*

(Hr'g Tr. 35. Emphasis added).

The Court allowed Gappy until March 13, 2018, to produce his income tax returns and medical records to corroborate his testimony and the evidentiary hearing was continued to April 6, 2018. Gappy did not file either the tax returns or the medical records. On April 5, 2018, the day before the adjourned hearing, Gappy filed an "Emergency Motion to Adjourn" asserting that,

---

[7] Gappy's father passed away shortly before the hearing in this matter. The properties are apparently owned by Midwest Masters, L.L.C. and his father was a shareholder in the L.L.C. However, Gappy himself is not a shareholder. Gappy's brother is the trustee of the trust that now manages the properties.

due to the circumstances surrounding his divorce, he was unable to be prepared for the hearing. The motion was denied.  (Or. Den Emergency Mot. Adj., ECF No. 144).

On April 6, 2018, the Court admitted into evidence the Opinion and Order from the Oakland County Circuit Court for Gappy's divorce ("Opinion of Divorce"). (Exhibit 10).   The Opinion of Divorce is dated February 2, 2018 and awards the marital home to Gappy's former wife.  In exchange for the execution of a quit claim deed by Gappy, his former wife has thirty days to buy him out for the amount of $187,500.00.  Gappy is held responsible for $15,000.00 of landscaping expenses for the home and therefore, his total recovery from the sale of the home is $172,500.00.  The state trial court also imputed annual income of $100,000 to Gappy based upon its finding that he is "underemployed and has an unexercised ability to earn."  (Exhibit 10).

As previously noted, Gappy testified at the February 6, 2018 hearing that he did not know what was going to happen with the house and that he had not received an opinion in the divorce case.  However, the Opinion of Divorce is dated February 2, 2018, four days before the hearing in this Court. Gappy represented himself in the divorce and likely would have received direct notification of the Opinion of Divorce.   This Court concludes that Gappy was less than forthcoming regarding his financial condition.

Only Gappy testified regarding Ayoub's financial condition.  He stated that Ayoub was elderly, had been through a bankruptcy, and does not have the financial means to pay a sanctions award.  No documentation was presented to support Ayoub's inability to pay.

### III.    Conclusions of Law

The District Court has determined that the sanctions were properly ordered by this Court pursuant to Rule 9011 as well as the inherent authority of this Court. *In re Ayoub*, 2017 WL 4161110. The question to be addressed on remand is limited to the nature and amount of sanctions that are proper in this case.

Defendants request that this Court order the same sanctions as were ordered in the first Sanctions Establishment Order. It is difficult for the Court to know the exact reasons for Ayoub and Gappy's objections to the sanctions requested as Gappy waived opening statement and was not present to make a closing statement. However, based on Gappy's cross-examination of counsel for defendants and his own testimony, it appears that Gappy and Ayoub contend that the requested attorney fees are not reasonable because there is an overlap in the work performed by co-counsel and the number of hours billed are excessive. In addition, Gappy complains that neither he nor Ayoub have the ability to pay sanctions. Finally, Gappy testified that sanctions of $1.00 would be sufficient to deter similar conduct as both he and Ayoub are done with the case. This Court makes the following findings of fact from the record made at the evidentiary hearing.

### A. Rule 11 Sanctions

"When a court metes out a sanction, it must exercise such power with restraint and discretion. The sanction levied must thus be commensurate with the egregiousness of the conduct." *Mapother & Mapother, P.S.C. v. Cooper* (*In re Downs*), 103 F.3d 472, 478 (6th Cir. 1996) (internal citation omitted.) The burden of proof is on the party moving for sanctions to demonstrate that the requested sanctions are warranted. *In re McLean Wine Co., Inc.,* 463 B.R. 838, 857 (Bankr. E.D. Mich. 2011). Ultimately, the type and amount of sanctions imposed are within the discretion of the court. *Kassab v. Aetna Industries, Inc.*, 265 F.Supp.2d 819, 822

(E.D. Mich. 2003); *Williamson v. Recovery Limited Partnership*, 826 F.3d 297, 301 (6th Cir. 2016).

Rule 9011(c)(2) of the Federal Rules of Bankruptcy Procedure provides, in pertinent part:

> A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. . . the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorney's fees and other expenses incurred as a direct result of the violation.

"[T]he purpose of Rule 11 sanctions is to deter rather than to compensate." [8] *Rentz v. Dynasty Apparel Industries, Inc.*, 556 F.3d 389, 400 (6th Cir. 2009) (quoting Fed. R. Civ. P. 11 Advisory Committee Notes (1993 Amendments)). However, sometimes effective deterrence requires compensating the aggrieved party for attorney fees arising from abusive litigation. *Id.*

In determining an appropriate sanction under Rule 11, a court should consider: (1) the nature of the violation committed; (2) the circumstances in which it was committed; (3) the circumstances (including the financial state) of the individual to be sanctioned; (4) those sanctioning measures that would suffice to deter that individual from similar violations in the future; and (5) the circumstances of the party or parties who may have been adversely affected by the violation. *Orlett v. Cincinnati Microwave, Inc.,* 954 F.2d 414, 420 (6th Cir. 1992). "Equitable considerations and the least severe sanction adequate to serve the purpose should be factors in the sanction determination." *Id.* at 420 (citation omitted). Under certain circumstances "*de minimis* sanctions . . . are simply inadequate to deter Rule 11 violations." *Rentz* 556 F.3d at 402.

---

[8]   Fed. R. Bankr. P. 9011 is "bankruptcy's analogue" to Fed. R .Civ. P. 11.  *Law v. Siegel*, __U.S.__, 134 S.Ct. 1188,1198 (2014).

This Court now considers the factors outlined in *Orlett*, together with other relevant precedent, in order to determine the appropriate sanctions in this case.

**Nature of the violation committed:**

The first factor under *Orlett* evaluates the nature of the violation committed. Here, this Court's predecessor concluded that the offending conducted included the filing of this adversary complaint for which both "Ayoub and Gappy knew or reasonably should have known that their legal theories were unsupportable and had no basis or merit (i.e., were frivolous)." (Sanctions Det. Or. 9). The Court additionally found that Ayoub and Gappy had engaged in forum shopping. The District Court affirmed these conclusions. *In re Ayoub*, 2017 WL 4161110.

**The circumstances in which the violation was committed:**

The second factor considers the legal circumstances in which the violation was committed. Again, the Court's predecessor found that by the time Ayoub and Gappy filed this adversary proceeding they knew the filing was frivolous as they were told repeatedly by two different state court judges and the Michigan Court of Appeals that their position had no merit or basis in law, were ordered not to file another case regarding the issues at bar without the court's permission, and had already been sanctioned. The District Court, likewise, affirmed this conclusion. *Id.*

**The circumstances (including the financial state) of the individual to be sanctioned:**

The third factor considers the circumstances of the individual to be sanctioned, including consideration of his or her financial state. In considering the amount of Rule 11 sanctions to be imposed, a court must consider the sanctioned party's ability to pay. *Jackson v. Law Firm of O'Hara, Ruberg, Osborne and Taylor*, 875 F.2d 1224, 1230 (6th Cir. 1989). It is the sanctioned party's burden to provide evidence of financial status. *Legair v. Circuit City Stores, Inc,* 213

Fed. Appx. 436, 440 (6th Cir. 2007) (internal citations omitted); *In re Lamar Crossing Apts., L.P.*, 2011 WL 6155714 at *10, 464 B.R. 61 (table) (B.A.P. 6th Cir. 2011). An unsupported claim regarding the inability to pay is not sufficient to satisfy this burden. *Legair,* 213 at 440 (citing *Dodd Ins. Services, Inc. v. Royal Ins. Co. of America*, 935 F.2d 1152 (10th Cir. 1991)).

Although this matter was remanded in order to afford Ayoub and Gappy the ability to oppose sanctions, they have squandered this opportunity. Gappy has merely presented his uncorroborated testimony to support the inability to pay for himself and Ayoub. Notably, Ayoub and Gappy were put on notice that it was their burden to prove and support their inability to pay as far back as September 29, 2016, when this Court's predecessor so concluded in the Sanctions Establishment Order.

Attorney Gappy's uncorroborated testimony is not sufficient to meet Ayoub's burden to establish the inability to pay. *Id.* See also *Sagraves v. Lab One, Inc.*, 316 Fed. Appx. 366, 372 (6th Cir. 2008) (The district court did not abuse its discretion in awarding attorney fees where the sanctioned party did not present sufficient documentation demonstrating his financial situation, but merely relied on his attorney's 'personal knowledge' of his financial situation.)

Likewise, Gappy has not met the burden of proof regarding his own inability to pay sanctions. *Legair,* 213 Fed. Appx. at 440. Gappy appeared at the February 6, 2018 without any documentation regarding his financial condition. Furthermore, although given the opportunity, Gappy failed to supplement the record regarding his claimed inability to pay.

Finally, Defendants have presented evidence that demonstrates Gappy has the ability to pay sanctions. The February 2, 2018 Opinion of Divorce orders that Gappy will be receiving

significant funds ($172,500) from the buy-out of the marital home.[9]  Additionally, the state court imputed income to Gappy of $100,000, finding that he was underemployed.

**Those sanctioning measures that would suffice as deterrence:**

Next, the court considers the type of sanction that would suffice to deter the inappropriate conduct.  This Court finds that *de minimis* sanctions are not adequate to deter similar future conduct of either Gappy or Ayoub.  See *Rentz*, 556 F.3d at 402.

At this point, only significant sanctions will deter Gappy and Ayoub, and those similarly situated. Prior rulings by state courts determined that their legal position was without merit.  In addition, the state court sanction did not deter Ayoub and Gappy from continuing to pursue the same frivolous legal arguments in the Bankruptcy Court.  The circumstances presented in this case are similar to those in *Tropf v. Fidelity Nat. Title Ins. Co.,* 289 F.3d 929 (6th Cir. 2002). There, the court found that the award of sanctions in the amount of the defendants' attorney fees was appropriate where the plaintiffs filed a federal court action making claims based on an argument that "they have repeatedly lost in the state courts."  *Id.* at 939.

**The circumstances of the parties adversely affected by the violation:**

Defendants have met their burden of proving they were adversely affected by Ayoub and Gappy's violation.  Significant attorney fees and costs were incurred to defend the adversary proceeding and Defendants seek sanctions in the amount of their attorney fees and costs incurred to defend the adversary proceeding as well as injunctive relief.  Rule 9011(c)(2) permits the award of sanctions in the form of "some or all" of reasonable attorney fees.

"A claim for reimbursement of [a party's] costs and legal fees requires a determination as to the reasonableness of such costs and fees." *Orlett,* 954 F.2d at 419.   Compensable fees

---

[9] If the buyout does not occur, the house is to be sold, with Gappy presumably being entitled to $172,500.00 of the proceeds.

should be limited to fees incurred as a result of the inappropriate conduct. *Kassab,* 265 F.Supp.2d at 823. In determining whether an hourly rate charged by an attorney is reasonable "courts use as a guideline the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record. The appropriate rate, therefore, is not necessarily the hourly rate sought by a particular firm, but is rather the market rate in the venue sufficient to encourage competent representation." *B & G Mining, Inc. v. Dir., OWCP,* 522 F.3d 657, 663 (6th Cir. 2008) (citations omitted). It is appropriate to consider the State Bar of Michigan Economics of Law Practice Survey in order to determine average billing rates in Michigan. *Wells v. Corporate Accounts Receivable,* 683 F. Supp.2d 600,603 (W.D. Mich. 2010).

With limited exceptions, Defendants' invoices reflect services necessary to successfully defend this adversary proceeding. They include communication with clients and co-counsel, as well as the research and preparation of pleadings through the entry of the Sanctions Establishment Order on September 29, 2016. While Gappy criticized the invoices as duplicative of lead attorney Collier's work, the Court disagrees. The Court reviewed the pleadings filed by all attorneys and is satisfied that each is sufficiently tailored to their client and not merely a restatement of Collier's work.

The Court finds that the 123.6 hours and rate charged by Collier were reasonable and necessary to defend the adversary complaint. There was a significant procedural history and while the legal issue was not complex, research and analysis were required. However, there is no evidence regarding Sullivan's years of experience or support for the hourly rate he charged. Therefore, Sullivan's hours will be removed from the hours charged from Exhibit 4. Exhibit 4 contains two groups of invoices, one group of invoices has a summary of hours reflecting

Sullivan's 2.9 hours, or $628.00. The other group, invoices without a summary, shall be reduced by Sullivan's 9.5 hours at the rate of $225.00 per hour, or $2,137.50. Although Collier requested $26,275.00 in attorney fees on behalf of his clients, the Court finds that $23,509.50 will be awarded as reasonable attorney fees and costs.

Regarding Yamin's attorney fees totaling $15,860.00, the Court finds that the 48.8 hours billed were reasonable to defend the adversary complaint, but the rate was not. First, the hours billed are significantly less than those of lead attorney Collier. While Yamin's hourly rate was $325.00, Table 4 of the *Economics of Law Practice* states the mean rate for an attorney with over 35 years of experience is $285.00. Other than the testimony regarding experience, there is no evidence to support a deviation from the mean rate of $285.00 per hour. The Court finds the reasonable attorney fee to be awarded to Yamin's clients is $13,908.00.

Defendants Beier, Yamin, Leser, RSA and Szantner have met their burden of demonstrating an amount of reasonable attorney fees sufficient to meet the goal of deterrence. Even though Ayoub and Gappy were given every opportunity to establish an inability to pay, they have not met their burden. As a result, the Court awards attorney's fees in the amount of $23,509.50 to Defendants Beier, Yamin and Leser pursuant to Rule 9011. Additionally, the Court awards attorney's fees in the amount of $13,908.00 to Defendants RSA and Szantner pursuant to Rule 9011.

### B. Inherent Power to Sanction

In addition to the power to issue sanctions under Rule 9011, "[b]ankruptcy courts, like Article III courts, enjoy inherent power to sanction parties for improper conduct."[10] *In re*

---

[10] *First Bank of Marietta v. Hartford Underwriters Ins. Co.,* 307 F.3d 501 (6th Cir. 2002) summarizes the distinction between Rule 11 sanctions and inherent power sanctions:

*Downs,* 103 F.3d at 477. The United States Supreme Court in *Chambers v. NASCO, Inc.,* 501 U.S. 32, 111 S. Ct. 2123 (1991) held that "it is firmly established that '[t]he power to punish for contempts is inherent in all courts.'" *Id.* at 44, 111 S. Ct. at 2123. (Citation omitted). The court cautioned, however, that due to "their very potency, inherent powers must be exercised with restraint and discretion." *Id.* (Citation omitted). In determining the appropriate sanction, the court explained:

> A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process. As we recognized in *Roadway Express,* outright dismissal of a lawsuit, which we had upheld in *Link,* is a particularly severe sanction, yet is within the court's discretion. 447 U.S., at 765, 100 S.Ct., at 2463. Consequently, the "less severe sanction" of an assessment of attorney's fees is undoubtedly within a court's inherent power as well. *Ibid.* See also *Hutto v. Finney,* 437 U.S. 678, 689, n. 14, 98 S.Ct. 2565, 2573, n. 14, 57 L.Ed.2d 522 (1978).

*Id.* at 44-45.

The Court further opined that "there are ample grounds for recognizing ... that in narrowly defined circumstances federal courts have inherent power to assess attorney's fees against counsel, ... even though the so-called 'American Rule' prohibits fee shifting in most cases." *Id.* (internal citations omitted). "[T]hese exceptions fall into three categories"; of

---

Further, as noted in *Chambers,* there are significant differences between Rule 11 sanctions[13] and inherent power sanctions. Rule 11 applies primarily to pleading and papers. *Byrne v. Nezhat,* 261 F.3d 1075, 1106 (11th Cir.2001). Another principal difference is that the imposition of Rule 11 sanctions requires a showing of "objectively unreasonable conduct," *United States v. Kouri–Perez,* 187 F.3d 1, 8 (1st Cir.1999). In contrast, the imposition of inherent power sanctions requires a finding of bad faith. "A court may impose sanctions pursuant to its inherent powers only when it finds the action in question was taken in bad faith," *Lockary v. Kayfetz,* 974 F.2d 1166, 1174 (9th Cir.1992) (citing *Chambers,* 501 U.S. at 50, 111 S.Ct. 2123), or conduct that is "tantamount to bad faith." *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 767, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980). ***Moreover, a Rule 11 monetary sanction is limited to "only those expenses directly caused by the [offending] filer."*** *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 406–07, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). Where, as here, the offending party's conduct extends through the proceedings, Rule 11 remedies would not address the injury that the district court sought to remedy that included withholding evidence, the consequences of the withholding, violating discovery orders and extending the proceedings.

*Id.* at 517. (Emphasis added).

relevance here is the third category which provides that "a court may assess attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.' " *Id*. at 45-46. (Internal quotation marks omitted).

> In this regard, if a court finds "that fraud has been practiced upon it, or that the very temple of justice has been defiled," it may assess attorney's fees against the responsible party, *Universal Oil, supra,* 328 U.S., at 580, 66 S.Ct., at 1179, as it may when a party "shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order,"[10] *Hutto,* 437 U.S., at 689, n. 14, 98 S.Ct., at 2573, n. 14. The imposition of sanctions in this instance transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus ***serving the dual purpose of "vindicat[ing] judicial authority without resort to the more drastic sanctions available for contempt of court and mak[ing] the prevailing party whole for expenses caused by his opponent's obstinacy."*** *Ibid.*

*Id*. (Emphasis added).

The court's inherent power to impose sanctions for bad-faith conduct is a separate and distinct source of authority and is not displaced by federal rules or statues. *Id.* at 52.

In *Chambers*, the district court found that "Chambers' actions were 'part of [a] scheme of deliberate misuse of the judicial process' designed 'to defeat NASCO's claim by harassment, repeated and endless delay, mountainous expense and waste of financial resources.'" *Id*. at 56-57. The district court ordered Chambers to pay all of NASCO's attorney's fees, concluding that such "fees were warranted due to the frequency and severity of Chambers' abuses of the judicial system and the resulting need to ensure that such abuses were not repeated." *Id*. Chambers argued that "the [d]istrict [c]ourt failed to tailor the sanction to the particular wrong." *Id*. at 56. The Supreme Court disagreed, holding that the district court acted within its "discretion to vindicate itself and compensate NASCO by requiring Chambers to pay for all attorney's fees." *Id*. at 56-57, 111 S.Ct. 2123.

In relying on *Chambers*, the Sixth Circuit emphasized that "[a]lthough sanctions cannot be so unreasonable that they constitute an abuse of discretion, there is no requirement of a perfect causal connection between the sanctioned conduct and the attorney's fees awarded, due to the punitive nature of the sanctions." *Williamson v. Recovery Ltd. P'ship*, 826 F.3d 297, 306 (6th Cir. 2016), *cert. denied sub nom. Robol v. Dispatch Printing Co.,* 137 S. Ct. 1106, 197 L. Ed. 2d 184 (2017) (affirming sanctions—'equal to the cost of pursuing this Motion for Sanctions, as well as the amount expended ... to uncover this fraud and locate the inventories uncovered by the Receiver'"); see also *First Bank of Marietta v. Hartford Underwriters Ins. Co.,* 307 F.3d 501, 525-26 (6th Cir. 2002) (affirming an award of "98% of the attorney's fees for Hartford's attorney's work through First Bank's appeal to the Sixth Circuit, …[, and] 100% of Hartford's attorney fees for the time expended filing its motions for sanctions, where the district court held a hearing on the appropriateness and amount of sanctions at which Hartford presented unrebutted expert testimony on the reasonableness of the fees charged).

In the case at bar, the Court's predecessor found that both Gappy and Ayoub acted in bad faith by utilizing the judicial process for an improper purpose by, among other things, repeated filings designed to delay Defendants' collection efforts, forum shopping, and taking action that had no support in law—all after being told repeatedly that their legal position had no legal merit. (Sanctions Det. Or., 15-17). The District Court affirmed the Sanctions Determination Order, specifically finding that "an award of sanctions was especially appropriate in light of the fact that … the state courts had repeatedly rejected Ayoub's efforts to conflate his personal status with that of the corporations in which he owned an interest." *In re Ayoub*, 2017 WL 4161110, at *13. Significantly, even after the District Court's order affirming the Sanctions Determination Order—Gappy is still adamant in his belief that he advanced a viable legal claim. In light of the

foregoing, and because prior lesser sanctions in the state court did not deter Ayoub and Gappy, the Court finds that an award of reasonable attorney fees is warranted in this case.

Lerner is requesting $15,874.75 in attorney fees and costs for 55.05 hours of work on behalf of his client, Cooper. (Exhibit 8)   The bill represents work by Cohen and Lerner through the appeal to the District Court.  First, the Court will not award attorney fees after September 29, 2016 for work on the District Court Appeal, as Gappy and Ayoub were at least partially successful in their appeal.  Further, co-counsel have not sought attorney fees for any work on the appeal.  The amount related to the appeal is $4,200.00 for 14 hours of work.

While the hourly rate of $300.00 or $325.00 charged by Cohen and Lerner is within the mean in Table 7 of the *Economics of Law Practice* for a creditor attorney in bankruptcy, the Court concludes that the reasonable rate is $300.00 as counsel agreed to the reduced hourly rate for client Cooper.  In addition, Gappy's criticism of the hours charged for Lerner's Motion to Dismiss that contains no citation to legal authority is legitimate. As a result, the Court will further reduce the bill by an additional 4 hours. The Court will award reasonable hours of 37.05 at the hourly rate of $300.00, for a total of $11,115.00.

Lerner's request for attorney fees of $12,672.50 for his client Cooper is not reasonable and will not be awarded.  First, the bill presented by Lerner for Cooper's legal services in this matter is duplicative.  Cooper is the court appointed receiver in the state court action and is represented by Lerner.  The entries on Cooper's bill reflect charges for the same work that was already billed by Cooper's attorney. Even if he had not been represented by other counsel, Cooper would not have been entitled to recover attorney fees for representing himself.  *Tindall v. One 1973 Ford Mustang*, 315 Fed. Appx. 533 (6th Cir. 2009).  Moreover, this Court notes that Cooper, as receiver, will likely be compensated for his services in the state court matter. Finally,

the record is void of any evidence regarding Cooper's experience to allow the Court to make a determination on a reasonable rate.

Lastly, the Court finds the reasonable attorney fee for the FirstMerit bill is $21,600.00. First, no fees are awarded for the work of Clos and Best as the Court has no information on their experience. This reduction totals $862.50. Second, the following entries are not awarded as they pertain to the state court proceeding or were redacted such that the Court could not ascertain the reason for the entry: 11/3/2014, $482.50; 11/3/2014, $165.00; 11/3/2014, $137.50; 11/5/2014, $55.00; 11/5/2014, $55.00; 11/7/2014, $330.00; 11/12/2014, $137.50; 11/12/2014, $137.50; 11/18/2014, $82.50; 11/19/2014, $192.50; 11/20/2014, $137.50; 12/19/2014, $220.00; 12/19/2014, $82.50; 2/10/2015, $220.00; 2/10/2015, $55.00; 3/6/2015, $192.50; and 6/1/2015, $55.00. These entries total $2,737.50. The Court finds that the remaining hours were required to defend this adversary proceeding. Herzoff's hourly rate of $275.00 is lower than the mean for attorneys of his experience in his practice area.

Accordingly, the Court finds that an award of $11,115.00 to Cooper and $21,600.00 to FirstMerit Bank is warranted under the Court's inherent authority.

### IV.     Conclusion

#### A.     Monetary Sanctions

On the basis of the foregoing, this Court orders monetary sanctions of $ 70,132.50 in the form of attorney fees, owed by Ted T. Ayoub and Norton Gappy, jointly and severally, payable as follows:

(1)  Beier Howlett, P.C., Joseph Yamin and Lambert Leser:  $23,509.50  payable to the trust account of their counsel of record in this case and divided between them as they see fit;

(2)  FirstMerit Bank: $ 21,600.00 payable to the trust account of its counsel of record in this case and divided between them as they see fit;

24

(3) <u>RSA Design Group, LLC and Robert Szantner</u>: $13,908.00 payable to the trust account of their counsel of record in this case and divided between them as they see fit;

(4) <u>Stephen Cooper</u>: $11,115.00 payable to the trust account of his counsel.

### B. Non-Monetary Sanctions

The Court further Orders that both Ayoub and Gappy are prohibited from filing any further pleadings or commencing further litigation in the Bankruptcy Court regarding or relating to the matters raised in this adversary proceeding (other than by appeal of this Opinion and Order) without receiving prior approval of this Court. "There is nothing unusual about imposing prefiling restrictions in matters with a history of repetitive or vexatious litigation." *Feathers v. Chervon U.S.A., Inc.*, 141 F.3d 264, 269 (6th Cir. 1998). The record in this case thoroughly establishes the Ayoub and Gappy have pursued repetitive and vexatious litigation in the state courts and subsequently in this Court. The above stated injunction is "not more severe than reasonably necessary" to prevent Ayoub and Gappy from filing more such litigation in this Court. *Tropf*, 289 F.3d at 940-941.

Lastly, for the reasons stated in Judge Shapero's September 29, 2016 Opinion and Order Establishing Nature and Amount of Sanctions, this Court Orders that the entire record of this adversary proceeding, except for the Court's Opinions and Orders, is sealed (subject to unsealing by an appropriate order). See *United States v. Associated Community Services, Inc. (In re Associated Community Services, Inc.)*, 547 B.R. 236 (Bankr. E.D. Mich. 2016).

**IT IS SO ORDERED.**

Signed on May 14, 2018



/s/ Maria L. Oxholm

**Maria L. Oxholm**
**United States Bankruptcy Judge**